At the outset, a couple of things I wanted to observe for you. First, I wanted to welcome Judge Paul Kelly, who is sitting by designation with our court. This week, he has been on the United States Court of Appeals for the Tenth Circuit for the last 27 years, where he has served with great distinction. He has sat with us before. We are delighted to welcome him again and thank him for all of his help. The second observation, you will note that Judge Carnes, who is on this panel, was unable to be here this morning. Something had come up, but she will listen to the oral argument tapes and will participate in the decision and the decision-making process. Third observation, for those of you who may not be familiar with our timing system, you will know we have got clocks that will tell you when you can proceed. There is a green light when you have a two-minute warning and a red light when your time is up. We would be much appreciative if you could bring your remarks to a conclusion when the red light goes on. Third and last, as you proceed with your argument, you may safely accept that we have had a chance to review the briefs, the record excerpts, and in some instances, we have read the record as well, so feel free to go right to the heart of your argument. With that, we will proceed with the first case, which is the United States v. Nathan Vinyard. Good morning to you. Good morning, Your Honor, and may it please the Court. In 2006, Congress created a national sex offender registry system and said that if you had been filing a sexual act or sexual contact, that you had to register as a sex offender under that national system. At the time, there was already in the Code a definition of sexual act and sexual contact, which Congress had drafted to be the two elements that formed the basis of all of the crimes of sexual abuse in Chapter 109A of Title 18. Yes, this was in a different title than the title that SORNA is contained in, and no, there is no explicit cross-reference between the two sections, but the parallels between the two sections are too compelling to be coincidence. First, they discuss identical terms, sexual act and sexual contact, and two, they discuss those identical terms in very similar contexts. Both sections are discussing the elements of a crime in Title 18 for the purpose of defining the elements or for the purpose of defining for the federal crimes of sexual abuse, and in Title 34 for the purpose of discussing which elements will trigger the registration requirements within SORNA. The logical conclusion is that in drafting SORNA, Congress picked up the definition of sexual contact from Title 18, and relevant here, that definition requires contact with the genitalia of a person. I'd like to discuss a couple of problems that we have with the government's approach and the approach that the District Court took here. The first is that it applies the plain meaning doctrine, but ignores context, and if you look at two recent cases that have come down from the Supreme Court, Esquivel-Quintana and Lockhart, both of those cases discuss how context is crucially important, even in applying the ordinary meaning or plain meaning canon. In Esquivel-Quintana, the court relied on a Title 18 definition of minor to determine how sexual abuse of a minor should be construed in an immigration context. The court starts with everyday understanding, but does so in context. Specifically, they looked at minor in the context of statutory rape, which was what the issue at hand was. I want to go back to the question of whether we would reach out for another provision in another chapter of the federal penal code. It's of note to me, and you can comment on this for me. One, the statutes are found in entirely different chapters and different titles of the code. One is in Title 34, the other is in Title 18. Two, Section 2246 itself says that its definitions only apply to this chapter, which is Chapter 109A of Title 18, and it says nothing, mentions not one word about the definition or 2246.3 in particular having applicability here. SORNA itself does contain its own set of definitions in Section 20911 of Title 34, which suggests to me at least that no outside definitions ought to be incorporated without some clear reference to 2246.3 because it says, quote, in this subchapter the following definitions apply. Why would I ignore all of that and reach out for a definition in a different chapter, particularly when they chose, when Congress, well, could have incorporated it, could have referenced it, and it chose not to do that? Yes, Your Honor. SORNA does not contain a definition of sexual act or sexual contact. However, this Court has to construe those terms, has to come to some definition in order to apply the categorical approach. And so even though there's no explicit cross-reference, the most natural place to go to do that is to the criminal code, where Congress has already defined both of these terms, and to look at the fact that those terms were in effect and hadn't been in effect for years. Right, it's not only did they not include any reference, they expressly said that the definitions only apply to this chapter. And that might be because the Title 18 definitions were drafted and adopted before SORNA. So the fact that Title 18 says these definitions apply within this chapter, I think doesn't carry that much weight when SORNA was adopted afterwards, and they picked up those same two terms, sexual act and sexual contact, that already existed in Title 18. What we're asking this Court to do is very similar to what the Supreme Court did in Esquivel-Quintana and in Lockhart, where they looked to Title 18 and how Congress had previously defined federal crimes as strong evidence of what Congress meant when it was talking about crimes in different areas of the United States Code. And neither of those cases involved an explicit cross-reference. As I just mentioned, Esquivel-Quintana involved the definition of minor in an immigration context, and the Court looked to the definition of minor and how that term was used within Title 18 to give the immigration definition meaning. Similarly, in Lockhart, there's actually a quote that I'd like to read from Lockhart because I think it's so on point. Talking about looking to Chapter 109A as evidence of congressional meaning, the Court said, with Chapter 109A so readily at hand, we are unpersuaded by our dissenting colleagues' invocation of basic examples from everyday life. And what the Court says is that when you have parallel statutes on very similar subject matter, that cannot be ignored. And that is the same thing that is present here. You have sexual act and sexual contact defined in Title 18. And then decades later, Congress comes back, creates SORNA, and uses those same two terms to determine which crimes are going to count for purposes of registration. The point I'd like to make about the government's definition is that it's tautological. They essentially define contact, but then they say sexual contact is contact that is sexual. And that's not very helpful, and that doesn't really give meaning to what Congress meant in SORNA. It essentially turns the categorical approach on its head because what it does is basically adopt whatever state or other jurisdiction has defined to be sexual as being incorporated in the federal definition. And that is the opposite of what the categorical approach is intended to do. Well, can you give me an example of a body part that's intimate by the Tennessee definition but not included in the federal definition of sexual contact? So the two definitions are very close. The only difference is that the federal definition requires actual contact with the genitalia, where Tennessee definition allows conviction based on contact with the genital area. And it's the fact that they include that additional modifier area or primary genital area that broadens the statute. We pointed to a couple of cases from Tennessee courts that show that Tennessee is not going to require contact with the genitalia in order to convict someone of sexual battery in that Tennessee's statute is broader than the federal definition. Thank you, and I'll reserve the rest of my time. Thanks very much. Good morning. May it please the Court. Michael Billingsley for the United States. In our view, the question in this case is simply whether at the time of Vineer's conviction, the Tennessee definition of sexual contact complied with the plain meaning of the term sexual contact. The district court determined that it did. In our view, that determination was correct and should be affirmed. I don't think anybody would dispute that the commonly understood term sexual contact, if you're applying that, the Tennessee definition applies. Even if you construe that plain meaning as narrowly as possible, the Tennessee definition complies with the definition of sexual contact. And that's the reason, I think, that they've argued so continuously that this Court needs to adopt the definition from Title 18, Chapter 109. But as Judge Marcus, as you pointed out, there's numerous reasons not to do that. It would be inconsistent with this Court's precedent. It would be inconsistent with, we submit, it would be inconsistent with the Supreme Court's decision in Escobar-Quintana. It would be inconsistent with the principles of statutory construction, much of which you covered there. Additionally, as you noted, that the Chapter 109 specifically says these definitions apply to this chapter. And so, we don't think there's any basis to incorporate the specific definition from Chapter 109 of Title 18 into Title 34, especially considering, again, to make some of the points the Court's already made, that Congress did incorporate particular portions of Title 18. Tier 3, for example, it incorporates portions of Title 18. So, it knew to do that if it wanted to do that. It didn't do that with regard to sexual contact. So, the only conclusion to draw, in our view, is that Congress did not intend to incorporate that definition, but instead to apply a plain meaning of the term, which is what the District Court did and found that the Tennessee definition of sexual contact, again, at the time of Mr. Vineyard's conviction, fell within that definition. Alternatively, the Court said even if you applied the definition, the federal definition, it would still comply. It would still be a categorical match. We think that determination was appropriate, too, but we don't think that... broader than the definition, assuming, arguendo, we would agree with her and look at 2246-3. No, Your Honor. No. The difference that she pointed out is one says primary genital area, one says genitals, but the federal definition also includes inner thigh, includes the groin, which the District Court said the groin would include the primary genital area. So, although the wording's technically different in terms of what's covered, the District Court correctly found, in our view, that it was a categorical match. I'm happy to answer any questions that the Court may have. No. Thanks very much. Thank you. Ms. Oswald, let me ask you a question at the outset that sort of perplexed me about the argument. Even if we were to reach out to find and use the definition in 2246 subsection 3, why is that definition broader, the Tennessee statute definition broader than that? I compared the two and it didn't seem to me that they were. One quote says the genitalia, anus, groin, breast, inner thigh, or buttocks. The other says primary genital area, groin, inner thigh, buttocks, or breast. Where's the difference? The federal statute would require actual contact with the genitalia, talking about that body part first, in order to sustain a conviction. Whereas the Tennessee statute would not. It would allow contact in the genital area without actual contact with the genitals. One of the cases we cited... Well, but the definition goes beyond that. Primary genital area, groin, inner thigh, et cetera, et cetera. So it's broader than just the genital area. What we would say about that is that in order to give the term primary genital area meaning in the Tennessee statute, it has to be interpreted more broadly than groin and inner thigh. Because otherwise there would be no point in including those terms as well. And so the way the government and the way the district court construed the Tennessee statute does not give effect to all of its terms. The argument is basically as simple as this. That genital area is broader than just genitals. A case that recently came down from the Tennessee Court of Criminal Appeals that we did not have a chance to cite in our brief is State v. Rodriguez. It also stands for this proposition. It came down in July. Is that in your brief? It is not. It is a case that I found while preparing for oral argument. It's called State v. Rodriguez from the Tennessee Court of Criminal Appeals. 2019 Westlaw 2724348. And in that case the conviction was based on the fact that the defendant had shook hands with a woman at church. And during that handshake grabbed her hand and pulled it toward what they characterized as his genital area over the clothing. And Tennessee affirmed that conviction even though that was the only contact at issue. And we would submit that as further evidence that the Tennessee statute is broader than the federal definition. In what respect? Federal definition is pretty broad. In the sense that it did not require there to be evidence of contact with the person's actual genitals. It was enough that there was contact in the area. Well, directly or through the clothing. Correct. And both statutes do allow for convictions. And it talks about the inner thigh as well as all the other pieces. Correct. And I don't see the difference. I haven't read that case because I didn't know about it. The difference is that the Tennessee Code includes all of those other parts as well. So the Tennessee Code includes the primary genital area, groin, inner thigh, buttock, or breast. Right. And the federal definition includes inner thigh, etc. Correct. But does not include the genital area. Well, sure it does. It doesn't say genital area. It doesn't have to. It has all the pieces. Well, we would dispute that and say that it does not because Well, what piece doesn't it have in there? Well, it does not include. So, for example, in a case that we did cite, Graham, the Tennessee court affirmed a conviction based on a victim testifying that she was touched under her panties, but also testified that she was not touched on her private parts or in between her legs. And so we would say that Now, which case is that? That is State v. Graham. I'm sorry. Is that the case you just referred to that just was decided? No, Your Honor. This is one that was included in our briefing. And what was the name of that case? State v. Graham. Graham. Okay. And so in this case, the victim testified that she was not touched on her private parts or in between her legs. And yet the court still affirmed the conviction. And there was, in fact, a dissent in that case that said, we're interpreting these terms too broadly to allow a conviction on this basis. And yet that is the law in Tennessee. That is how Tennessee is applying its statute. Let me come at it one more time, just looking at the words themselves. One speaks of the genitalia, groin, inner thigh. The other speaks of primary genital area, groin, inner thigh. What's the difference other than one says primary and the other does not? And both include definitions that go beyond the genitalia and include groin and inner thigh. I'm missing it. The only difference is that the Tennessee statute includes primary genital area and the federal statute includes only the actual genitals. And inner thigh. And groin. Well, both statutes include that. Right. Thank you very much. Thank you, Your Honor. I didn't mean to cut you off. I believe my time is up. Thank you. Thank you so much.